450 So.2d 621 (1984)
STATE of Louisiana
v.
Robert JACKSON.
No. 82-KA-0332.
Supreme Court of Louisiana.
April 2, 1984.
*625 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr. Asst. Atty. Dist. Atty., for plaintiff-appellee.
Ronald J. Rakosky, New Orleans, for defendant-appellant.
MARCUS, Justice.
Robert Jackson was indicted by the grand jury for the first degree murder of Whitney Schultz in violation of La.R.S. 14:30. Defendant's motion to suppress was denied by the trial judge. After trial by jury, defendant was found guilty of second degree murder and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
On appeal, we remanded the case for a "reopened hearing" on the motion to suppress because evidence as to probable cause for the arrest of defendant had been improperly excluded during the pretrial hearing. We retained jurisdiction of the appeal in the event of an adverse ruling to consider that ruling as well as other assignments of error not previously considered. State v. Jackson, 424 So.2d 997 (La.1982). On remand, the state and defendant stipulated as to the additional evidence that would have been adduced had ten named witnesses testified at the hearing. Thereafter, the trial judge again denied the motion to suppress. Defendant has assigned thirty assignments of error for reversal of his conviction and sentence.[1]

*626 FACTS
The body of Whitney Schultz was found under the bed in room 233 of Mason's Motel in New Orleans about 3:30 p.m. on Monday, September 24, 1979 by a motel housekeeper. The room had no signs of a forced entry or a struggle. The police learned that room 233 had been registered to James Davis of Orlando, Florida for one day at 9:52 a.m. on Sunday, September 23. The motel records also revealed that room 233 was the only room on the motel's second floor rented out from Saturday through the time of the body's discovery on Monday. The police also learned that the victim had last been seen on Sunday about 10:30 p.m. leaving his parents' house to go to an automatic banking machine. However, his automobile which he had been driving was not at the motel nor anywhere in the vicinity. The police listed Schultz's car as a stolen vehicle and sent that information nationwide through a National Crime Information Center (NCIC) bulletin.
The investigating officers then were told by Detective Vivian Jackson that she had responded to a complaint of a kidnapping and rape at Mason's Motel in room 233 on Sunday, September 23 about 1:00 p.m. Detective Jackson had found four persons in the motel room: Audrey Brown, the complainant, another black female (later identified as Stephanie Johnson), defendant, who identified himself and supplied his Florida driver's license, and another black male, James Davis (later identified as Edward Wynn[2]). They informed the detective that they were on their way from their homes in Orlando, Florida to California but had been forced to stop despite having little money because defendant's car had broken down outside New Orleans. Her interviews convinced Detective Jackson that Brown's complaint was merely an attempt to obtain free transportation for her back to Orlando, and thus no action had been taken.
On October 2, 1979, the San Diego police found Schultz's car abandoned without license plates. When the discovery was verified on October 3 with the New Orleans police, they asked the San Diego police to arrest Brown, Wynn and defendant for Schultz's murder and issued an NCIC bulletin to that effect. On October 5, the New Orleans police relayed to the San Diego police Brown's San Diego address obtained from her mother by the Orlando police. Defendant was arrested on a San Diego street with Brown on October 9. Defendant waived extradition and was returned to New Orleans on October 15.
That day, after waiving his rights, defendant gave a written confession to the murder of Whitney Schultz. He stated the foursome had stopped in New Orleans because his car had broken down during their journey from Orlando, Florida to San Diego, California. Defendant told how he and Edward Wynn met the victim at a bank and returned with him to their motel room. Then while the two women hid in the bathroom, he strangled Schultz with a belt around his neck as Wynn held the victim's hands. Defendant stopped when Schultz began to bleed from his nose and mouth. He and Wynn put Schultz under the bed and wiped down the room while the women packed Schultz's car. The foursome then traveled to San Diego in Schultz's car using Schultz's VISA card to buy gas and food. At trial, the testimony of the women corroborated the facts revealed by defendant's confession and also repeated defendant's statement during the trip that "we killed him." The coroner testified that Schultz's death was caused by strangulation of the neck about twelve to twenty-four hours prior to the body's discovery.

ASSIGNMENTS OF ERROR NOS. 1 AND 16
Defendant contends the trial judge erred in denying his motion to suppress his confession and in admitting it in evidence at trial. He argues that there was no probable cause for his arrest; therefore, the *627 confession was inadmissible as "fruit of the poisonous tree."
A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. Probable cause for an arrest exists when the facts and circumstances known to the police and of which the police have reasonably trustworthy information are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Bourgeois, 388 So.2d 359 (La.1980).
In this case, the police knew a murder had been committed. They knew that defendant had identified himself to a police officer the preceding day as an occupant in that motel room where the body was found. They knew that no one else had rented that room or even any room on that floor for the proceeding two days. They knew that defendant had been on the way to California but had no car and little money and that the victim's car was missing after his ill-fated trip to a bank Sunday night. Finally, they knew that the deceased's car was now across the country at defendant's destination, San Diego, California. All this information came reliably from fellow police officers, business records and defendant himself. Based on the totality of the circumstances, we conclude that probable cause existed for the arrest of defendant. Hence, the trial court did not err in denying defendant's motion to suppress and in admitting his confession in evidence.
Assignments of Error Nos. 1 and 16 are without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in refusing to deliver a copy of the court's written charge prior to reading it to the jury.
Defendant timely filed a request for a written jury charge pursuant to La.Code Crim.P. art. 801. On the first day of trial, the judge requested defendant instead stipulate that the oral charge be transcribed when read to the jury. Defendant at that time refused but later withdrew his motion for a written charge.
Defendant concedes he thereby waived his right to a written charge since this court requires a contemporaneous objection to the failure to give written charges before it will consider the error, if any, on appeal. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Cluse, 362 So.2d 765 (La.1978). While defendant now argues he was intimidated into withdrawing his motion, the record reveals defendant did so not when the judge requested the stipulation but rather two days later after the judge agreed to read a general charge composed by defendant and the state.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in denying his motion to waive trial by jury because he was charged with a capital offense.
In Louisiana, trial by jury may be knowingly and intelligently waived by the defendant except in capital cases. La. Const. art. I, § 17; La.Code Crim.P. arts. 780 & 782(B). There is clearly no constitutional right not to be tried by a jury, except in the very unusual case where a fair jury trial is impossible or unlikely. Singer v. United States, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965); State v. Robinson, 421 So.2d 229 (La.1982); State v. Toomer, 395 So.2d 1320 (La.1981). There is nothing in the record to suggest that a fair trial by jury was impossible or unlikely in this case.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in denying his motion to quash. He argues that a guilt-prone jury was created through the state's use of challenges for cause of prospective jurors due to their sentiments regarding the death penalty.
*628 A review of the voir dire examination reveals that two jurors were properly excused for cause after challenges by the state in compliance with La.Code Crim.P. art. 798(2) and Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Defendant does not have a ground for complaint because the state used only eight of the twelve peremptory challenges to which it was entitled, La.Code Crim.P. art. 800, and because the defendant by the jury's verdict was insulated from the death penalty. State v. George, 371 So.2d 762 (La.), cert. denied, 444 U.S. 953, 100 S.Ct. 430, 62 L.Ed.2d 325 (1979). Moreover, defendant's contention has been rejected by the United States Supreme Court in Witherspoon v. Illinois, supra, and consistently by this court. State v. Miller, 391 So.2d 1159 (La.1980); State v. Kelly, 375 So.2d 1344 (La.1979).
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in denying his motion for the disclosure of the state's information on the arrest and conviction records of prospective jurors for his use during voir dire. Defendant argues this refusal thwarted his preference of selecting jurors with experience as to "police coercive tactics" who thereby would be better able to judge his defense attacking the voluntariness of his confession.
The accused has the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. La. Const. art. I, sec. 17. The purpose of the voir dire examination is to test the competency and impartiality of prospective jurors. Wide latitude should be given the defendant during voir dire so that he may discover bases for challenges for cause and, within reasonable limits, secure information for the intelligent exercise of his peremptory challenges. State v. Robinson, 404 So.2d 907 (La.1981); State v. Clark, 325 So.2d 802 (La.1976). Furthermore, the scope of the voir dire examination is within the sound discretion of the trial judge and his rulings thereon will not be disturbed in the absence of a clear abuse of discretion. La.Code Crim.P. art. 786; State v. James, 431 So.2d 399 (La.), cert. denied, ___ U.S. ___, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983). Whether a particular question is essential to full voir dire is best governed by a liberal discretion by the trial judge under the prevailing facts and circumstances, and the disallowance of a proper question will not automatically create reversible error, for in reviewing the fairness of the ruling the entire examination must be considered. State v. Robinson, supra; State v. Allen, 380 So.2d 28 (La.1980).
The state conceded it had the information on prospective jurors' criminal records and intended to use it in selecting the jury. Also, defendant asserts he could not practicably obtain the criminal records of the 230 prospective jurors from other sources. Defendant therefore argues that this non-reciprocal advantage of the state offended his due process right to a fair trial. The trial judge denied defendant's motion for disclosure but permitted defendant to question the prospective jurors about their convictions, if any, but not about their arrests.
The criminal records of prospective jurors may be useful to the state in its desire to challenge jurors with inclinations or biases against the state. But they are not pertinent to the purpose of defendant's voir dire: to challenge jurors whom defendant believes will not approach the verdict in a detached and objective manner. Whatever the practical desire of trial counsel, the recognized purpose of full voir dire is not to pack the jury with persons favorable to the defendant or to the state. Under the circumstances of this case, defendant was not entitled to disclosure of the criminal records. Hence, the trial judge did not err in denying defendant's motion for disclosure.[3] Moreover, *629 viewing the entire voir dire, we find that defendant was afforded a full and complete examination of the prospective jurors.
Assignment of Error No. 5 is without merit.

ASSIGNMENTS OF ERROR NOS. 7, 8, 10 AND 11
Defendant contends the trial judge made certain erroneous rulings during voir dire. Specifically, he challenges the denial of his requests for individual voir dire (No. 7) and for special instructions to the prospective jurors (Nos. 8 and 10) and the curtailment of his questioning of a prospective juror concerning a recent presidential assassination attempt (No. 11).
The scope of voir dire examination is within the sound discretion of the trial judge, and his rulings thereon will not be disturbed on appeal absent a clear abuse of discretion. In evaluating the fairness of his rulings, the entire examination must be considered. La.Code Crim.P. art. 786; State v. Robinson, 404 So.2d 907 (La.1981).
The burden is on defendant to show special circumstances indicating why individual voir dire is warranted. State v. Monroe, 397 So.2d 1258 (La.1981), cert. denied, ___ U.S. ___, 103 S.Ct. 3571, 77 L.Ed.2d 1411 (1983); State v. Dominick, 354 So.2d 1316 (La.1978). Because defendant made no such showing, the trial judge did not abuse his discretion in denying the request. Further, the trial judge did not err in not giving defendant's requested instruction on attitudes toward the death penalty because it was not wholly correct nor necessary given the instructions to the prospective jurors on sentencing in capital cases. Similarly, it was not error to deny defendant's request that the prospective jurors be charged on the effects of a non-unanimous recommendation during a sentencing phase because that was not pertinent to the guilt phase and indeed was mooted in this case by the jury's verdict of second degree murder. Finally, the entire record reveals that the trial judge's curtailment of questions concerning the example of a recent presidential assassination attempt did not in any way prevent defendant's full inquiry into the presumption of innocence and the state's burden of proof beyond a reasonable doubt.
Assignments of Error Nos. 7, 8, 10 and 11 are without merit.

ASSIGNMENT OF ERROR NO. 12
Defendant contends the trial judge erred in admitting prejudicial evidence of other crimes through testimony concerning medical tests suggesting homosexual activity prior to the victim's death.
During discovery, defendant was provided with copies of the autopsy report on Whitney Schultz indicating the presence of seminal fluid in the victim's mouth and rectum, but was also told the state would not introduce other crimes evidence to show intent as to the offense charged. At trial, the pathologist, Dr. Paul McGarry, testified he had taken oral and anal swabs from the victim for lab tests. Mrs. Patricia Daniels, a medical technician in the coroner's office, testified over defendant's objection that she had found seminal fluid on both oral and anal swabs (but no spermatozoa). She stated that her tests could not identify the individual from which the fluid came but that it was deposited in the victim's body cavities within 24 to 48 hours prior to his death. Stephanie Johnson, who hid in the bathroom during the murder, testified that when she emerged she saw the victim lying on the floor with his pants unzipped and wet. Defendant's confession contains the spontaneous declaration that "I want to put in there that none of us raped that boy."
It is unclear that this evidence indicates another crime of defendant as there was no evidence linking defendant to the sexual activities. In any event, evidence of other crimes which are part of the res gestae of the charged offense is admissible without balancing the probative value of the evidence against its prejudicial effect and without any pretrial Prieur notice by *630 the state. La.R.S. 15:447; La.Code Crim.P. art. 720; State v. Williams, 375 So.2d 364 (La.1979). To constitute res gestae, the circumstances must be necessary incidents of the criminal act or immediate concomitants of it, or form in conjunction with it one continuous transaction. La.R.S. 15:448. Here, the purpose served by the admission of the evidence about the victim's autopsy was not to depict defendant as a bad man but rather properly to complete the story of the crime on trial by showing its immediate context of happenings near in time and place. State v. Haarala, 398 So.2d 1093 (La.1981). Hence, the trial judge did not err in admitting the evidence.
Assignment of Error No. 12 is without merit.

ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in admitting in evidence an oral inculpatory statement made by him despite the absence of the required pretrial notice.
At trial, both Audrey Brown and Stephanie Johnson testified over defendant's objection that during the ride to California defendant stated, "we killed him." Defendant's first counsel in April 1980 requested pretrial inspection of "all oral confessions, statements and admissions made by Robert Jackson, before or after arrest." The state in May 1980 answered "none." The state did however furnish defendant's October 15, 1979 written confession and also in a contemporaneous response to defendant's bill of particulars informed defendant that both Brown and Johnson had given statements inculpating defendant. In September 1980 defendant's new counsel filed a motion for discovery which included a request to be advised of the existence and be provided with discovery of other inculpatory statements made by defendant besides the October 15, 1979 confession. The state answered "state has given defendant all statements in its possession and within its knowledge." That answer, however, also in another part agreed that the state would provide the tape recordings of the full statements of Brown and Johnson to the New Orleans police, of which defendant admittedly had already received the transcripts. At trial, defendant conceded that these full copies of the women's statements contained the circumstances and content of the inculpatory statement which defendant had made to them during the trip to California. Nonetheless, the state's written pretrial notice of the state's intent to use inculpatory statements at trial listed only defendant's October 15, 1979 written confession.
Upon motion of defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made. La.Code Crim.P. art. 716(B). Further, La.Code Crim.P. art. 768 then provided that "if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence." Nevertheless, where substantial compliance with the article's purpose has been met through other pretrial pleadings, the technical deficiency of the notice may not bar introduction of the statement. State v. Sneed, 316 So.2d 372 (La.1975). The purpose of giving defendant sufficient notice of each inculpatory statement the state intends to use is to permit defendant a fair opportunity to meet the issue. If a defendant is misled by state responses relative to the state's possession of an oral inculpatory statement and is lulled into a misapprehension of the strength of the state's case and suffers prejudice when the statement is subsequently introduced at trial, basic unfairness results which constitutes reversible error. State v. Russell, 416 So.2d 1283 (La.), cert. denied, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982); State v. Davis, 399 So.2d 1168 (La.1981).
*631 The state erred in not listing defendant's oral inculpatory statement to the women in its article 768 notice. Further, the state's discovery response of "none" to defendant's request for oral inculpatory statements was incorrect if viewed in isolation. However, defendant's April 1980 request confused his discovery rights under art. 716(B) and (C) and it is possible to interpret that request given its language and context to relate solely to art. 716(C).[4] Indeed, while his request was for pretrial inspection, as to his statement to the women at issue herein defendant was clearly entitled only to be told of its existence, not its content. Yet, defendant concedes he was informed through the women's full statements of the actual content and circumstances of defendant's inculpatory statement to which the women would testify. Given this substantial compliance through other pretrial pleadings, defendant suffered no prejudice and the technical deficiencies of the state's pretrial notices should not have barred introduction of the statement. Hence, the trial judge did not err in allowing the testimony.
Moreover, this court has held that the failure of the state to provide defendant with correct article 768 notice may be harmless error where the remaining evidence of guilt is overwhelming. State v. Neslo, 433 So.2d 73 (La.1983); State v. Gautreaux, 377 So.2d 289 (La.1979). Such is the situation here.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant contends the trial judge erred in refusing to remove the jury during the offer and introduction of the state's exhibits in evidence. Defendant objected to three of the state's exhibits. However, a proper foundation had been laid for each, and each was ruled admissible. Assignment of Error No. 14 is without merit.

ASSIGNMENT OF ERROR NO. 19
Defendant contends the trial judge erred in denying his motion for a recess based on the absence of a witness.
Trial commenced on April 7, 1981. On Thursday morning, April 9, defendant moved for a recess until the following week, or perhaps until Friday afternoon, when Dr. William Eckert might be available to testify. Defendant proffered that Dr. Eckert, a California expert then testifying in another out-of-state trial, would have testified given his examination of the medical data that, while Whitney Schultz died of asphyxia, other theories besides strangulation were possible, particularly that Schultz died from having the bed placed on him in his weakened condition (compressive asphyxiation). Defendant admitted he should have subpoenaed the doctor but failed to do so. The trial judge denied the motion.
To be entitled to a recess to secure the presence of a witness, a party must show the actual necessity for the witness and the materiality of his expected testimony, a probability that the witness will be available at the time to which the trial is deferred and due diligence in attempting to procure the witness for trial. State v. White, 389 So.2d 1300 (La.1980); State v. Bertrand, 381 So.2d 489 (La.1980); cf. La.Code Crim.P. art. 709. Generally, the due diligence requirement is not satisfied where defense counsel fails to have the potential witness subpoenaed. State v. Terry, 359 So.2d 172 (La.1978). The decision to grant or deny a recess is within the sound discretion of the trial judge and will not be overturned on appellate review absent a clear abuse of discretion. State v. Gordy, 380 So.2d 1347 (La.1980); State v. Robertson, 358 So.2d 931 (La.1978).
Dr. Eckert would not have offered positive evidence that defendant died other *632 than by asphyxia as already established by the coroner's testimony and defendant's confession. Leaving the victim in a weakened condition under the bed to die does not relieve defendant's culpability for second degree murder. Defendant did not make the requisite showing of the witness' availability or prejudice by his absence. Hence, the trial judge did not err in denying the motion for a recess.
Assignment of Error No. 19 is without merit.

ASSIGNMENT OF ERROR NO. 20
Defendant contends the trial judge erred in denying his motion for a mistrial based on the state's failure to disclose grants of immunity to two state witnesses.
In response to defendant's first set of discovery motions, the state answered that Audrey Brown and Stephanie Johnson had been promised special consideration in exchange for testimony or evidence against defendant. However, when defendant in his second set of motions requested disclosure of the exact terms of any promises or grants of immunity to persons including Brown and Johnson in exchange for information or testimony against defendant, the state responded "none." At trial, one detective did testify that it was his understanding that the two women had been given immunity from prosecution by the district attorney in exchange for their statements. However, he was not present during that discussion. Defendant extensively cross-examined both Brown and Johnson at trial concerning possible special consideration they were receiving in exchange for their testimony. Both women maintained that while they thought the pending charges (of being accessories after the fact) would be dropped after they testified, no specific promises had been made.
The possibility and scope of promises was thus fully aired before the jury, thereby placing the credibility of the state's witnesses at issue. Hence, the trial judge did not err in denying the motion for a mistrial.
Assignment of Error No. 20 is without merit.

ASSIGNMENTS OF ERROR NOS. 21, 22, 28 AND 30
Defendant contends the trial judge erred in refusing to give two requested special jury instructions (relating to accomplice testimony and to specific intent) and in twice giving erroneous instructions on the law of principals.
The state and the defendant have the right before argument to submit to the court special written charges for the jury. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.Code Crim.P. art. 807.
We find no merit in defendant's contentions. Our review of the record reveals the requested instructions were either not pertinent or were included in the trial judge's general charge, which correctly instructed the jury on the law of principals.
Assignments of Error Nos. 21, 22, 28 and 30 are without merit.

ASSIGNMENT OF ERROR NO. 23
Defendant contends the trial judge erred in refusing to give defendant's requested special instruction concerning the crime of negligent homicide.
La.Code Crim.P. art. 814 lists the only verdicts responsive to a first degree murder indictment as guilty, guilty of second degree murder, guilty of manslaughter, not guilty. Instructions on these permissive verdicts are mandatory. State v. Toomer, 395 So.2d 1320 (La.1981). La.Code Crim.P. art. 802 obligates the trial judge to charge the jury on the law applicable to the case. Under this rule, the trial judge is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Marse, 365 So.2d 1319 (La.1978).
*633 The trial judge sufficiently instructed the jury on the elements of the possible verdicts and that they must find the state proved all the elements of one of those crimes beyond a reasonable doubt or return a verdict of not guilty. State v. Tompkins, 403 So.2d 644 (La.1981); State v. Matthews, 380 So.2d 43 (La.1980). Moreover, the offense of negligent homicide was not fairly supported by the evidence; thus, the special instruction was not pertinent and need not have been given. La.Code Crim.P. art. 807; State v. Lane, 414 So.2d 1223 (La.1982); State v. Anderson, 390 So.2d 878 (La.1980). Hence, the trial judge did not err in refusing to give the special requested charge on negligent homicide.
Assignment of Error No. 23 is without merit.

ASSIGNMENT OF ERROR NO. 24
Defendant contends the trial judge erred in overruling his objection to a portion of the judge's general charge to the jury on the ground that it contained a prohibited presumption.
The state cannot shift to the defendant the burden of disproving an element of the crime charged by use of a conclusive presumption or by shifting the burden of persuasion. Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); State v. Heads, 385 So.2d 230 (La.1980). However, this court has consistently held that a jury charge must be considered as a whole with particular expressions construed in context and has declined to reverse a conviction on the ground of an erroneous instruction unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motton, 395 So.2d 1337 (La.), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981); State v. Stramiello, 392 So.2d 425 (La.1980).
In this case, the specific intent instruction considered as a whole merely sets out a permissive inference that intent to kill may be implied under certain circumstances. It leaves the jury free to credit or reject the inference and does not shift the burden of proof to defendant. State v. Mattheson, 407 So.2d 1150 (La.1981), cert. denied, ___ U.S. ___, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). While one sentence of the instruction was improper, that particular portion was general in nature and given its context of appropriate examples of proper inferences the jury was correctly instructed by the general charge as a whole relative to specific intent, its formation and its proof by surrounding circumstances. State v. George, 346 So.2d 694 (La.1977). Moreover, under the circumstances of this case where it was shown that defendant strangled the victim, intent was clearly not at issue. Hence, any error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Davis, 411 So.2d 2 (La.1982); see State v. Heads, supra; cf. State ex rel Ross v. Blackburn, 403 So.2d 719 (La.1981).
Assignment of Error No. 24 is without merit.

ASSIGNMENT OF ERROR NO. 27
Defendant contends the trial judge erred in refusing to instruct the jury as to the applicable penalty provisions of second degree murder and manslaughter.
The state and defendant submitted a jury charge to the trial judge which included the penalty provisions for first degree murder, second degree murder and manslaughter. The trial judge, however, instructed the jury on the penalty for first degree murder, but not on the penalties for the responsive verdicts.
When the penalty imposed by the statute is a mandatory one, the trial judge must inform the jury of the penalty on request of the defendant and must permit the defense to argue the penalty to the jury. State v. Hooks, 421 So.2d 880 (La. 1982); State v. Washington, 367 So.2d 4 (La.1978). In instances other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict, the decision to permit or deny an instruction or argument *634 on an offense's penalty is within the discretion of the trial judge. State v. Williams, 420 So.2d 1116 (La.1982); State v. Dawson, 392 So.2d 445 (La.1980); State v. Carthan, 377 So.2d 308 (La.1979); State v. Blackwell, 298 So.2d 798 (La.1974) (on rehearing), cert. denied, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975).
In the instant case, the trial judge did not inform the jury as requested that a verdict of guilty of second degree murder carried a mandatory penalty of life imprisonment. That omission was erroneous. However, defendant's request was addressed simply to the reading of all responsive verdict penalties. The decision not to give the charge on the penalty for manslaughter was within the trial judge's discretion. The record discloses that defendant merely objected to the trial judge's refusal to instruct the jury on all the penalties and did not, as required by La.Code Crim.P. art. 841, state the grounds for his objection. See La.Code Crim.P. art. 801. The defendant must state the basis for his objection when he makes it so that the trial judge has an opportunity to make the proper ruling and prevent or cure an error. State v. Baylis, 388 So.2d 713 (La.1980). The specific error which the trial judge is making must therefore be pointed out to the judge, and it is settled that defendant is limited on appeal to grounds for the objection articulated at trial. State v. West, 419 So.2d 868 (La.1982); State v. Provo, 396 So.2d 1298 (La.1981); State v. Johnson, 389 So.2d 372 (La.1980). In any event, at the time the trial judge was requested to instruct the jury on the mandatory penalty for second degree murder, this court had not specifically extended this requirement to responsive verdicts creating this exception to the general rule that charging the jury concerning penalties for responsive verdicts is within the trial judge's discretion. State v. Dawson, supra. Under the circumstances of this case, we find no reversible error.
Assignment of Error No. 27 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
DIXON, C.J., and LEMMON, J., concur.
DIXON, Chief Justice (concurring).
I respectfully concur, disagreeing with the treatment of Assignment of Error No. 5.
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 6, 9, 15, 17, 18, 25, 26 and 29. Hence, we consider them to have been abandoned. State v. Carlisle, 315 So.2d 675 (La.1975); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
[2] At a separate trial, Edward Wynn was convicted of the first degree murder of Whitney Schultz and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.
[3] Since we find there is no mandated discovery, this court need not reach the question of whether such information as compiled by prosecutors is privileged "work product." See State v. Holmes, 347 So.2d 221 (La.1977); State v. Wright, 344 So.2d 1014 (La.1977).
[4] Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer. La.Code Crim.P. art. 716(C) (emphasis added). In this case, the state had none.