SHORTESS, Judge.
Rube E. Rogers (defendant) was charged by bill of information with possession of marijuana with intent to distribute. LSA-R.S. 40:966. Defendant pled not guilty, but after trial by jury, he was convicted as charged. The trial court sentenced him to a five-year term of imprisonment at hard labor. Defendant appeals with three assignments of error.
FACTS
On January 9,1984, Trooper Cade Blades of the Louisiana State Police narcotics department received a tip from a confidential informant that marijuana had been observed at defendant’s home. Blades got a search warrant, searched defendant’s house, and seized a quantity of marijuana and miscellaneous paraphernalia.
A large bag which held several smaller bags of marijuana and a set of plastic scales were found in defendant’s bedroom dresser. In the kitchen, a glass smoking pipe and two small packages of marijuana were found. Another package of marijuana was found in the living room, rolled inside a map located behind a cabinet. In addition, marijuana seeds were found stored in various containers throughout the house.
Defendant was convicted of simple possession of marijuana in 1977. In 1981, defendant was convicted of two counts of distribution of marijuana to an undercover police officer. Based on this search and seizure, the instant charge was brought against defendant.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in denying his motion for a continuance based on the absence of a material witness.
On the first day of trial, after the jury was sworn, defendant moved for a continuance because Althea Bassemier, one of the witnesses, was unable to testify because she had just been discharged from the hospital. The trial court suggested that defendant obtain more concrete medical data, stating that discharge from a medical facility did not establish the witness’s inability to attend the trial. Thereafter, the matter was recessed for the night.
The next day, defense counsel stated that he had spoken with Bassemier’s physician, who indicated that she was still hospitalized. Defense counsel recited for the record Bassemier’s anticipated testimony:
I believe she will testify that she went to Rube Rogers’ house, with Harold Stein, that she observed Harold Stein placing, in Rube’s room, a bag of marijuana containing, several other smaller bags of marijuana.
[[Image here]]
And that Rube was not home.
[[Image here]]
*1157 That she then, left with Harold Stein, and went promptly to a telephone and she observed and heard, overheard Harold Stein phoning the police and saying I know that there is some marijuana in Rube Rogers’ house.
The prosecutor then agreed to stipulate to the proposed testimony if defense counsel put it in writing. Because of defense counsel’s uncertainty, the trial court instructed counsel to contact the witness, after obtaining permission from her physician, and verify her testimony.
After his telephone conversation with the witness, counsel admitted that his prior description of Bassemeir’s prospective testimony was not accurate. He then stated that Bassemier would testify that she accompanied Harold Stein to defendant’s house; that while no one else was present, she saw Stein go inside defendant’s bedroom; that she did not see Stein with any drugs or observe him place anything inside defendant’s bedroom; that after they left defendant’s house, Stein telephoned the police, but she did not overhear the telephone conversation; that she surmised that Stein was setting up defendant. Defense counsel did not know the basis of her conclusion and admitted it would be inadmissible.
The proposed stipulation was aborted because defense counsel wanted the witness’s unsupported theory of Stein’s motive to be included in the stipulation. The trial court then denied the motion for a continuance, concluding that the witness would not testify to anything substantial other than the fact that Stein entered defendant’s bedroom.
We note initially that the motion for a continuance should have properly been styled a motion for recess. LSA-C.Cr.P. arts. 708, 761. However, this misnomer does not prevent us from examining the motion as though it had been properly denominated. State v. White, 389 So.2d 1300, 1301 (La.1980). Regardless of the appellation, a motion for recess is evaluated by the same standards as a motion for continuance, although it need not be in writing or comply with the formal requisites of a motion for a continuance. State v. White, 389 So.2d at 1301. See also State v. Bertrand, 381 So.2d 489, 491 n. 1 (La.1980).
To be entitled to a recess to secure the presence of a witness, a party must show the actual necessity for the witness, the materiality of his expected testimony, the probability that he will be available at the time to which the trial is deferred, and due diligence in attempting to procure the witness for trial. State v. Jackson, 450 So.2d 621, 631 (La.1984). The decision to grant or deny a recess is within the sound discretion of the trial judge and will not be overturned on appellate review absent a clear abuse of discretion. State v. Jackson, 450 So.2d at 631.
The trial court did not err in denying the motion. Defendant’s motion revealed that she was unable to testify that she either saw Harold Stein place anything in defendant’s bedroom or that she heard the content of Stein’s conversation with the police. Defendant established only that Bassemier would have testified to Stein’s opportunity to plant marijuana in defendant’s bedroom a short time before the instant search warrant was obtained. Through the independent testimony of Cindy Bresman, Mark White, and defendant himself, the defense established Stein’s brief unsupervised presence at defendant’s house on the day the search warrant was issued. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that the trial court erred by preventing testimony of a hearsay witness concerning statements made by Harold Stein.
Throughout the trial, the defense sought to establish that Stein placed the bag of marijuana inside defendant’s dresser. Defendant took the stand on his own behalf, testifying in detail about his relationship with Harold Stein. Defendant noted that he usually saw Stein about twice a year; that on the night prior to the instant search, Stein visited his home; that Stein wanted either to borrow money or get mon *1158 ey by selling him marijuana; that he declined the offers and claimed that he only used marijuana once or twice since having been placed on probation in 1983; that the next day, Stein, his wife, and Althea Basse-mier arrived at his house at about noon; that he invited Stein and his companions inside his house while he watched a weather report on television; and that Stein remained inside the house conversing with Cindy Bresman for a short time after he went outside.
At the conclusion of defendant’s testimony, defense counsel examined prospective witness, Ernest Drake, out of the presence of the jury, to determine the admissibility of Drake’s testimony. Drake testified that he is an attorney and neighbor of defendant. At a previously scheduled trial date for this matter, about one and one-half years prior to the instant trial, Drake informally assisted the defense team. Drake testified that he spoke with Harold Stein immediately before trial “because he wanted to find out what [Stein] was going to say” when he took the stand for the defense. Stein reported to Drake that he would say that “the stuff” was his, for he brought it to defendant’s house because he was going to New Orleans and did not want it stored in his car. Stein also suggested that “the stuff” was collateral on a loan.
Relying on Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), defendant sought to use Drake as a witness without calling Stein to testify, employing the hearsay exception of a declaration against penal interest. Defendant conceded that Stein was available to testify; however, he speculated that Stein would no longer testify favorably to the defense. The trial court suggested that the defense call Stein as a witness and then impeach him by extrinsic evidence if he did not admit to the statements made to Drake. In brief, defendant contends that “being unable to impeach his own witness [he] was thus forced to submit its hearsay witness.” We disagree.
In Chambers v. Mississippi, the defendant was arrested for a murder committed by a person named McDonald. McDonald had confessed to several close acquaintances claiming credit for the murder for which the defendant was on trial. McDonald testified for the defense, repudiating his former confession. Because of a Mississippi common law rule that a party may not impeach his own witness, the defendant was unable to introduce the testimony of the three witnesses to whom McDonald had admitted that he shot the victim. The United States Supreme Court held that McDonald’s hearsay statements should not have been excluded from Chamber’s trial because there were substantial assurances of their trustworthiness. McDonald’s oral confessions were made spontaneously a short time after the murder and were corroborated by eyewitness testimony. McDonald also had made a sworn written confession. Each confession was truly incriminating and clearly against the third party’s penal interest. The Supreme Court noted: “McDonald was present in the courtroom and was under oath. He could have been cross-examined by the State, and his demeanor and responses weighed by the jury. The availability of McDonald significantly distinguishes this case from prior Mississippi precedent....” 93 S.Ct. at 1049. [Citations omitted.]
Unlike the Mississippi evidence rule existing in Chambers, LSA-R.S. 15:487 provides that one may impeach his own witness with prior inconsistent statements if taken by surprise by the testimony of such witness, or if the witness shows hostility toward him. Therefore, either surprise or hostility will permit impeachment by prior inconsistent statements; both need not be present. State v. Richardson, 459 So.2d 31, 37 (La.App. 1st Cir.1984). Thus, if Stein’s testimony had developed as anticipated by defendant, extrinsic evidence of his prior inconsistent statement would have been admissible after laying a proper foundation.
Although the Louisiana Supreme Court recognized a declaration against penal interest as an exception to the hearsay rule in State v. Gilmore, 332 So.2d 789 (La.1976), the exception attaches only when the *1159 declarant is unavailable at trial and when there is additional evidence indicating that the declarant’s statement is reliable. State v. Rushing, 464 So.2d 268, 273 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986). The record before us indicates that Stein was available to testify at trial. There was no showing to indicate that Stein would have asserted his fifth amendment privilege if called as a witness by the defense. Cf. State v. Rushing, 464 So.2d at 272. Moreover, Stein’s out-of-court assertion was ambiguous and did not possess characteristics which assured its reliability. Here, unlike Chambers, the person to whom Stein made the statement was not a friend, nor was the statement made shortly after the offense occurred. Rather, the statement was couched in terms of what Stein would say at trial, indicating at least in part that defendant might be aware of the presence of marijuana in his home.
For the foregoing reasons, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the trial court erred by failing to order Trooper Blades to disclose the identity of the confidential informant during his testimony at trial on the merits. Defendant asserts that such a disclosure would have buttressed the defense theory that Stein planted marijuana in his house.
The record reveals that on June 5, 1984, the trial court granted a defense motion to traverse the state’s answers to discovery and ordered the state to disclose the identity of the confidential informant. On August 1, 1984, this court granted the state’s writ application and reversed the trial court ruling. In so doing, this court noted that defendant had only alleged that the informant supplied information to the police to obtain a search warrant. Such an allegation did not set forth exceptional circumstances justifying disclosure of the identity of a confidential informant.
Defendant apparently made no further effort to obtain the identity of the informant until this trial. At the commencement of Blades’ cross-examination, defense counsel asked that Blades be ordered to reveal the informant’s identity. The trial court rejected the argument, noting that defendant indicated that he already knew the informant’s identity and thus did not need disclosure in order to secure the presence of the informant to testify as a witness at trial. In addition, the trial court observed that defendant conceded that Blades did not participate in any attempt to frame defendant and that the state did not allude to the informant’s alleged participation during its case in chief.
The informer privilege is the privilege of withholding the identity of an informant who supplies information to law enforcement officials concerning crime. The privilege is founded upon public policy and seeks to advance the public interest in effective law enforcement. State v. Dotson, 260 La. 471, 256 So.2d 594, 606 (1971) (on rehearing), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972). Because of its social importance, courts zealously guard the privilege. They order disclosure of the name of a confidential informant only under exceptional circumstances for the prevention of an injustice. The burden is upon defendant to show exceptional circumstances justifying disclosure. State v. Dotson, 256 So.2d at 606.
Although no fixed rule exists, the court-ordered disclosures of the identity of an informant relate to instances in which the prosecutor’s case shows the informer, cooperating with the police, participated in the crime. State v. Dotson, 256 So.2d at 606. In other words, the defendant must convince the court that the informant may be able to give testimony which is necessary to a fair determination of the issue of guilt or innocence.
We agree with the trial court that defendant failed to bear the burden of demonstrating exceptional circumstances pertaining to his defense which necessitated disclosure of the confidential informant’s identity. Defendant contended that he already knew the identity of the informant. Previous discussion indicated that defen *1160 dant had the alleged informant available to testify at trial on the merits. Defendant also conceded that Blades likely knew nothing of the alleged placing of marijuana inside defendant’s home. Furthermore, defendant’s theory fails to account for the other quantities of contraband found throughout his house. The theory would not have been bolstered by a disclosure revealing that the informant was someone other than Stein. Under these circumstances, balancing of the public interest in protecting the flow of information against the individual’s right to prepare his defense weighs heavily in favor of upholding the informer privilege. This assignment of error also lacks merit.
For the reasons stated, defendant’s conviction and sentence are affirmed.
AFFIRMED.