556 So.2d 622 (1990)
STATE of Louisiana
v.
William J. WIGGINS.
No. 89-KA-607.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1990.
*624 Martha E. Sassone, Staff Appellate Counsel, Twenty-Fourth Judicial District, Indigent Defender Bd., Gretna, for appellant.
John M. Mamoulides, Dist. Atty., Twenty-Fourth Judicial District, Parish of Jefferson, State of La., Denis Ganucheau, Asst. Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Louise Korns, of counsel, Office of the Dist. Atty., Gretna, for appellee.
Before CHEHARDY, C.J., and GRISBAUM and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
Defendant, William Wiggins, appeals from his convictions of aggravated burglary (LSA-R.S. 14:60) and attempted aggravated rape (LSA-R.S. 14:27, 14:42).
On appeal defendant presents seven assignments of error. In the first, defendant asserts the trial judge erred in denying his motion to produce R.A.P. (rap) sheets of the prospective jurors. Next, defendant contends the trial judge erred in denying defendant's motion for a mistrial based on remarks made by a state witness, Detective Glen Toca. Defendant further complains the trial judge erroneously refused to use defendant's jury charge regarding identification, and in denying his motion to argue the penalty resulting from the State's intention to file a multiple bill. In addition, defendant asserts the trial judge erred in allowing the State to impeach the credibility of defense witness Debbie Hill through the use of a prior "conviction" under LSA-R.S. 40:983. Defendant also contends the evidence was insufficient to support the verdict and, finally, asks this court to review the record for patent errors.
On May 19, 1987, the 16-year-old victim and her mother entertained relatives in their home. During the evening, the teenager retired to her room to complete her homework, after which she watched the television in her bedroom for awhile before going to sleep. The victim did not turn the television off prior to falling asleep.
The guests left the house sometime after midnight and, at approximately 2 a.m., the victim's mother left the house after deciding to get gas in the car in order to save a trip in the morning when she would be driving her daughter to school. She returned to the house at approximately 2:40 a.m.
While her mother was gone, the victim was awakened from sleep by the touch of someone's hand on her face. The person touching her then moved closer to her face and asked her to kiss him. By the light of the television set, a nearby street light shining into her room, and the intruder's voice, the victim recognized the male intruder as the defendant whom she knew through her friendship with his sister.
As defendant approached closer to the victim she observed he was nude and noticed he had an erection. She then started screaming for her mother. Defendant responded by punching her in the arms and chest and ordering her to remove her underwear. She resisted defendant's advances, but he ultimately succeeded in forcefully removing her panties. The perpetrator then pushed the victim into the middle of the bed and got on top of her. He ordered her to touch his penis and insert it into her vagina. She refused and continued to resist her attacker's advances, and, although there was no penetration, the defendant's penis touched the surface of the victim's vagina. At that point, the attack was interrupted when defendant suddenly looked toward the living room as if he heard someone approaching. He then got off the bed and left the room walking toward the front door.
The victim heard the front door being unlocked, but remained in bed fearing defendant *625 was still in the house and hoping her mother would return. She finally got out of bed, replaced her underwear and ran to a neighbor's house, dressed only in her bra-type garment and panties, crying hysterically. She remained there until the police arrived. At that time, she gave a statement to the police describing the attack and identifying defendant as the perpetrator. The police investigation later revealed the intruder's entry into the house was made through a rear window after he removed a screen.
Defendant was later arrested, tried and convicted of the aforementioned crimes. He, however, contended he was innocent and at trial produced a witness to support his allegation that he was baby-sitting at the time of the incident. His witness, Debbie Hill, asserted he was baby-sitting her three-year-old son between the hours of 10 p.m. and 2:55 a.m. on the dates in question. She stated she telephoned a neighbor at 12:45 a.m., asking her to check on defendant and her son. Minutes later, Ms. Hill testified, the neighbor told her defendant answered the door and apparently all was well. Ms. Hill could not, however, verify defendant's whereabouts or activities between the hours of 12:45 a.m. and 2:55 a.m., when she arrived home to find defendant present in her apartment.
Defendant first contends the trial judge erred in denying his motion for the State to produce the rap sheets of prospective jurors. In this respect he argues the denial resulted in a violation of his right to due process. He argues the State has access to such records and that without the information he could not conduct a full voir dire examination and could not secure information giving him a basis for exercising his peremptory challenges or challenges for cause.
A defendant on trial has the right to a full and complete voir dire examination of potential jurors. LSA-Const. Art 1, 17; LSA-C.Cr.P. art. 786. The purposes of the voir dire examination are to allow for the evaluation of the qualifications of prospective jurors by testing their impartiality and competency, and in order to discover the basis for the intelligent exercise of peremptory challenges and/or challenges for cause. State v. Gabriel, 542 So.2d 528 (La.App. 5 Cir.1989).
The defendant should be given wide latitude during voir dire. State v. Jackson, 450 So.2d 621 (La.1984). This does not mean, however, that a defendant is necessarily entitled to the rap sheets of prospective jurors. State v. Jackson, supra; State v. Weiland, 540 So.2d 1288 (La.App. 5 Cir. 1989). Consideration must be given to the particular facts and circumstances in each case. In addition, a trial judge has great discretion in his rulings on the scope of voir dire and those rulings will not be disturbed absent a clear abuse of discretion. State v. Jackson, supra.
In this case, while the trial judge denied the motion for production of the prospective jurors' rap sheets, he also ordered the State to provide defendant with any arrest or conviction information used by it to challenge any juror for cause. In addition, the State had already voluntarily provided defense with certain arrest information it relied on to challenge a particular prospective juror for cause. Under these circumstances, we find the defendant's voir dire rights were fully protected and that the trial judge did not err in denying defendant's motion.
Defendant next complains that a defense witness made prejudicial remarks in his testimony and as a result a mistrial should have been granted. Defendant points out the remarks complained of relate to his refusal to give a statement to police and to his refusal to do so on the advice of counsel. Although the trial judge admonished the jury to disregard the testimony, defendant asserts the admonishment was not sufficient to assure defendant a fair trial and a mistrial was warranted, citing LSA-C.Cr.P. art. 771.
Under LSA-C.Cr.P. art. 771, the trial judge has discretion to decide whether improper remarks or comments warrant a mistrial or an admonishment to the jury. State v. Walters, 514 So.2d 257 (La.App. 5 Cir. 1987), writ denied, 523 So.2d 811 (La. *626 1988). Only where substantial prejudice would deprive a defendant of a fair trial is a mistrial warranted. State v. Tribbet, 415 So.2d 182 (La.1982). Where a police officer's remarks are concerned, the court should consider the effects on the jury with considerable concern; however, the ruling denying a mistrial should not be upset absent a finding that the trial judge clearly abused his discretion. State v. Nuccio, 454 So.2d 93 (La.1984).
The remarks complained of in this case were made gratuitously by Detective Glen Toca during the course of direct examination as follows:
"On June the 1st, the subject was apprehended in Jefferson Parish by road units and incarcerated at the Jefferson Parish Correctional Center in Gretna. At that time I attempted to make arrangements to interview the subject through the Indigent Defender Board, but was informed that they had advised him against waiving his rights to giving a statement at that time."
After a discussion at the bench as a result of defendant's objection to the comments and his motion for mistrial, the trial judge deemed an admonishment to the jury adequate to cure any prejudice resulting from Detective Toca's remarks. The admonishment given by the trial judge ordered the jury to disregard the remarks and instructed the jury in a lengthy and comprehensive manner regarding defendant's right against selfincrimination. The judge's comments amply remedied any prejudicial effect resulting from the detective's statement. Thus, we find the trial judge did not err in denying defendant's motion for a mistrial.
In the next assignment of error, defendant argues the trial judge erroneously failed to use his jury instruction on identification. He asserts he had a right to have the charge submitted, because it was pertinent, relevant and not included in the general charge. LSA-C.Cr.P. art. 807; State v. Jackson, supra.
Defendant is entitled to have a requested charge given to the jury if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. LSA-C.Cr.P. art. 807. The charge need not be given if it is included in the general charge or in another special charge to be given by the trial judge. LSA-C. Cr.P. art. 807.
The trial judge instructed the jury as follows:
"The State must prove beyond a reasonable doubt that the crime charged in this case was actually committed. But more than that, the State must also prove beyond a reasonable doubt that the defendant, William Wiggins, committed that crime. Therefore, the identification of William Wiggins as the perpetrator is a necessary part of the State's case. As with other witnesses, you must first decide whether [the victim] is telling you the truth as she understands it. But you must do more than that, you must also decide how accurate the identification was, whether the witness saw what she thought she saw.
"You should consider:
"Whether the witness had a good opportunity to see the person.
"Whether the witness seemed as though she was paying careful attention to what was going on.
"Whether the description given by the witness was close to the way the defendant actually looked.
"How much time had passed between the crime and the first identification by the witness. Whether at the time of the first identification by the witness was likely to make a mistake; that is, the witness was not asked to pick out the person she saw from a group of people. You should also consider whether the witness seemed certain at the time of the first identification and again when she testified here in court.
"If you are not convinced beyond a reasonable doubt that it was the defendant who committed the crime, you must find him not guilty."
The trial judge's charge satisfactorily instructs the jury on the State's burden of proving defendant's identity as the person *627 who committed the crime. Defendant's requested charge, based on United States v. Telfaire, 469 F.2d 552 (D.C.Cir.1972), is fully incorporated into that general charge. We find, therefore, that the trial judge properly refused to give defendant's special charge on identification.
The defendant next asserts the trial judge erred in denying defendant's motion to discuss the enhancement penalty during closing argument. Defendant asserts he should have been allowed to tell the jury of the mandatory penalty for a multiple offender, citing State v. Jackson, supra. There the court held a defendant is entitled to argue a mandatory penalty in closing argument.
At the time of trial the State had not yet decided whether a multiple bill would be filed against defendant since the case had not been determined. In addition, neither of the crimes defendant was charged with contained a mandatory penalty, but rather set out a range of punishment. As a result, it was within the trial judge's discretion to grant or deny defendant's request to discuss the mandatory multiple bill penalty. State v. Jackson, supra. After reviewing the record, we find no abuse of the trial judge's discretion in this matter.
The fifth assignment of error presented by defendant alleges the trial judge erred in allowing the State to impeach defendant's witness Debbie Hill through the use of a prior LSA-R.S. 40:983 "conviction". Defendant asserts State v. Rabbas, 278 So.2d 45 (La.1973), specifically prohibits the use of such convictions for impeachment purposes.
LSA-R.S. 40:983 provides for the conditional dismissal and discharge of a first offense conviction for possession of certain controlled substances without the entry of a judgment of guilt. The conditional aspect requires the fulfillment of the terms and conditions of probation and, once the probation is successfully completed, the proceedings are dismissed and the defendant discharged. This type of conviction is not deemed a conviction "for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." LSA-R.S. 40:983.
The Rabbas case cited by defendant contains a statement supporting defendant's position that an R.S. 40:983 conviction cannot be used for impeachment purposes. That statement is dicta since the case was reversed and remanded on other grounds. Nevertheless, the court's conclusion is sound based on the purposes and language of the statute. However, this does not necessarily mean a reversal is warranted when the admission of inadmissible evidence does not affect the substantial rights of the accused. LSA-C.Cr.P. art. 921. The standard to be applied is "whether there is a `reasonable' possibility that the evidence might have contributed to the verdict, and whether the reviewing court is prepared to state beyond a reasonable doubt that it did not." State v. Walters, 523 So.2d at 811.
In this case, the trial judge allowed the State to attempt to impeach Ms. Hill by introducing evidence of an R.S. 40:983 plea tendered by her in 1983 for first-time possession of marijuana, over defendant's objection. At the close of the trial, defendant moved for a mistrial based on the same objection. At that time the trial judge denied the motion but instructed the jury as follows:
"In regard to the testimony of the defendant's witness, Mrs. Debbie Hill, the Court instructs you to disregard the district attorney's attempt to impeach the credibility by claiming that she had been convicted of a crime. Mrs. Hill has not been shown to have been convicted of a crime. Therefore, you must disregard State exhibit No. 7."
After reviewing the record we do not find the verdict was influenced by the admission of Ms. Hill's conviction under LSA-R.S. 40:983 into evidence, particularly in view of the trial judge's admonishment to the jury. As a result we conclude the admission of the improper evidence was harmless error and a reversal is not warranted.
Defendant next complains that his convictions should be reversed because the evidence was insufficient to justify the verdict.
*628 He does not allude to any specifics, but asks the court to review the evidence for sufficiency.
In reviewing a conviction for sufficiency of the evidence, the court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La. 1988); State v. DiLosa, 529 So.2d 14 (La.App. 5 Cir. 1988).
Defendant was accused and convicted of aggravated burglary and attempted aggravated rape. Aggravated burglary is defined as
"[T]he unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
"Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less then one nor more than thirty years."
LSA-R.S. 14:60.
The evidence in this case shows defendant entered the dwelling with the intent to commit a rape while it was inhabited by the victim. It further establishes defendant battered the victim by his use of force and violence upon her in order to carry out his felonious intent. See LSA-R.S. 14:33. Viewing the evidence in the light most favorable to the prosecution, then, we find any rational trier of fact could have found defendant guilty of aggravated burglary beyond a reasonable doubt.
Aggravated rape is defined in LSA-R.S. 14:42 as:
"A. * * * a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), `participate' shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
C. Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
The crime of rape is defined as the act of anal or vaginal sexual intercourse with a person not the spouse of the offender and committed without the person's lawful consent. LSA-R.S. 14:41(A). Emission is not necessary and any penetration, however slight, is sufficient to complete the crime. LSA-R.S. 14:41(B).
An attempt is committed when the defendant forms the intent to rape the victim and thereafter does an act for the purpose of and tending directly toward the accomplishing of the object. LSA-R.S. 14:27(A). Mere preparation is not sufficient to constitute an attempt, but the "overt act need not be the ultimate step toward, or the last proximate act or the last possible act in the consummation of the crime attempted." State v. Williams, 490 So.2d 255, 261 (La. 1986). The determination of whether the *629 defendant's actions constitute mere preparation or an attempt is made after evaluating the totality of the facts and circumstances of each case. Id.
In this case, the testimony showed defendant approached the victim in a nude state with an erection. It further showed defendant got on top of her, tried to force her to touch him and tried to coerce her into initiating penetration. While he was unable to complete penetration due to the victim's resistance, his penis did contact the surface of her vagina. Considering these facts, we find the evidence was sufficient under Jackson v. Virginia, supra, to support defendant's conviction of attempted aggravated rape.
Finally, defendant asks this court to review the record for patent error. Under the provisions of LSA-C.Cr.P. art. 920, only matters designated in the assignments of error and errors discoverable by a mere inspection of the pleadings and proceedings, without inspection of the evidence, are subject to appellate consideration. The record for this purpose includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. McGee, 527 So.2d 486 (La.App. 5 Cir. 1988). After a review of the record pursuant to the above, we find no patent error.
Accordingly, the defendant's convictions and sentences for aggravated burglary and attempted aggravated rape are hereby affirmed.
AFFIRMED.