STATE OF LOUISIANA

VERSUS

MARVIN K CHEST

NO. 24-KA-199

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-3462, DIVISION "F"
HONORABLE MICHAEL P. MENTZ, JUDGE PRESIDING

February 26, 2025

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.

**CONVICTIONS AFFIRMED; SENTENCE ON COUNT FOUR
AFFIRMED; SENTENCES ON COUNTS ONE AND TWO VACATED;
REMANDED FOR RESENTENCING**
> **JJM**
> **SMC**
> **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Matthew R. Clauss

COUNSEL FOR DEFENDANT/APPELLANT,
MARVIN CHEST
 Kevin V. Boshea

**MOLAISON, J.**

The defendant, Marvin Chest, appeals his convictions and sentences for one count of sexual battery and two counts of indecent behavior. For the following reasons, we affirm all of the convictions and his sentence on count four, vacate the sentences on counts one and two, and remand for resentencing.

## PROCEDURAL HISTORY

On August 4, 2021, the Jefferson Parish District Attorney charged the defendant with sexual battery of a juvenile under thirteen in violation of La. R.S. 14:43.1 (count one), indecent behavior with a juvenile under thirteen in violation of La. R.S. 14:81 (count two), sexual battery in violation of La. R.S. 14:43.1 (count three), and indecent behavior with a juvenile violating La. R.S. 14:81 (count four), all on the same victim. He pled not guilty.

The defendant filed several pretrial motions, including a "Motion to Instruct Jury as to Mandatory Penalties and For Leave for Defense to Argue Same," a "Motion to Exclude Evidence Under La. C.Cr.P. Article 729.5; Alternative Motion to Compel Discovery and to Continue Trial," and a "Supplemental Memorandum in Support of Motion to Exclude Evidence Under La. C.Cr.P. Article 729.5; Alternative Motion to Compel Discovery and to Continue Trial."

On August 9, 2023, the trial court denied the motion to instruct the jury regarding mandatory penalties and the motion to continue the trial. The trial court denied the defense's second motion to continue trial on August 14, 2023. The State dismissed count three, and the defendant proceeded to trial on the remaining charges. On August 16, 2023, the jury found the defendant guilty as charged on counts one and two and guilty of attempted indecent behavior with a juvenile on count four.

The defendant filed motions for post-verdict judgment of acquittal and new trial and a motion for departure from the minimum sentence. On August 25, 2023, the trial judge denied the motion for acquittal and a new trial and considered the motion for departure from the minimum sentence as a sentencing memorandum. The trial judge then sentenced the defendant to thirty-five years imprisonment at hard labor with twenty-five years to be served without the benefit of parole, probation, or suspension of sentence for count one; twenty-five years imprisonment at hard labor with two years to be served without the benefit of parole, probation, or suspension of sentence for count two; and three years and six months imprisonment at hard labor for count four. The judge ordered the sentences to run concurrently, imposed a $250 crime lab fee, and recommended any self-help or rehabilitation programs the defendant is eligible for and available. The judge also ordered the defendant to register as a sex offender. This timely appeal followed.

## FACTS

At trial, Deputy Jared Turnage testified that on June 6, 2021, he responded to a call of a report of indecent behavior with a juvenile. Deputy Turnage spoke with L.R.[1], who stated her thirteen-year-old daughter, I.A., disclosed that the defendant assaulted her. The defendant was L.R.'s live-in boyfriend. L.R. reported that she confronted the defendant regarding these allegations, and the defendant left the home.

Detective Kristen Hollis met with L.R., I.A., and M.Y., L.R.'s older daughter, the next day. I.A. stated that in March of 2021, her stepfather began making inappropriate sexual comments to her. She reported that he had her "strip

---

[1] In the interest of protecting the victim, we will identify the victim and her family members by their initials. *See State v. Granado-Gonzalez*, 23-387 (La. App. 5 Cir. 7/3/24), 392 So.3d 909, 911, *writ denied*, 24-905 (La. 11/20/24), 2024 WL 4830698.

nude and bend over to, I guess, prove that she wasn't a female in a sexual video on her phone." I.A. reported that the defendant had fondled her breasts and placed his fingers in her vagina to check to see if she was a virgin. During her last encounter with the defendant, he attempted this again, made a comment about wanting to perform oral sex on her, and attempted to blindfold her.

Aubrey Ziegler, a forensic interviewer at the Jefferson Parish Children's Advocacy Center (CAC), testified that she interviewed I.A. The trial judge accepted the interview recording as evidence, and the State played it for the jury. In the interview, I.A. explained that in March, which was about three months prior, the defendant "checked" her like doctors do to see if "[she had] done anything." She denied that she was the girl in the video on her phone; the defendant did not believe her. The defendant told her to let him "check her," or he would tell her mother about the video. I.A. stated that the defendant pulled her pants down and had her get on the ground on her knees like a dog. He lifted the back of her shirt and took a picture of her back to compare to the other girl.[2] When she questioned him, he told her to be quiet and to shut up. I.A. stated that the defendant then used his fingers in a circle back-and-forth motion both in and out of her vagina. She repeatedly told him, "No." She then showered, and the defendant left. I.A. stated while she was in the shower, the defendant called her from his car. The defendant asked if she ever "gave anybody head," and she said no. Then he asked if she wanted to give it to him, and she said no. I.A. explained that he wanted her to touch his private part. He asked her if she wanted to know what it felt like. Later that evening, the defendant asked her if she was wearing a bra, told her to let him see, and tried to lift her shirt. I.A. went upstairs and remained locked in her room for the rest of the night.

---

[2] I.A. stated defendant had since gotten a new phone and that she was unsure if he deleted the picture.

I.A. described an incident that occurred on the previous Friday. I.A. said she and the defendant were in the garage when the defendant asked what she had done with the boys. She asked him why he brought that up, but he kept asking about boys and "a bunch of nasty stuff." I.A. said he told her to go upstairs because he did not want the cameras to hear them. I.A. followed him, stating that the defendant wanted to talk about her phone that was taken away from her. They went to her room, where the defendant repeatedly tried to blindfold her. When she asked why, he told her not to worry about it and that he would not do anything she did not want. The defendant said to her that she needed to trust him. I.A. stated she turned her back to the defendant, and he pulled her hair as he attempted to blindfold her. She pushed him out of the way, and they went to her sister's room. I.A. said the defendant pushed her on the bed and tried to lift her leg. She recalled kicking him and quickly getting up.

I.A. said she entered the bathroom and locked the door; the defendant banged on the door. When she opened the door, the defendant told her that he was not trying to check her but was trying to lick her "private part," which she said was her vagina. The defendant said he was trying to show her what it felt like because she would do it one day. I.A. stated she told him she was thirteen, he was her stepdad, and asked why he would do that to her. I.A. explained that the defendant called her a liar because he thought she already knew what it felt like and said that if she told anyone, she was a "snitch" and "lame." I.A. believes the cameras captured his screaming.

I.A. stated that the defendant went downstairs to check on his children. I.A. made an excuse to leave because she did not want to be near the defendant. Later, her sister, M.Y., picked her up to bring her home. When they pulled up at their home, I.A. told M.Y. what happened. When M.Y. asked her what she wanted to

do, I.A. replied that she wished M.Y. would tell their mother. M.Y. agreed to do so.

Camille Detrinis, a nurse practitioner at Children's Hospital Audrey Hepburn CARE Center, testified that she examined I.A. on August 24, 2021, based on a referral from the Jefferson Parish CAC. She explained that I.A. allowed a physical examination but deferred her genital examination. Ms. Detrinis read from her report of the exam that I.A. disclosed sexual abuse by her mother's ex-boyfriend, the defendant. I.A. stated that she felt uncomfortable around him because she witnessed him "putting his hand" on her mother. I.A.'s statements regarding the defendant's actions were almost identical to the CAC interview.

M.Y. testified that she was driving I.A. home on June 6, 2021. When they got near the residence, I.A. had a "panic attack" and stated that she could not go into their home. I.A. said that the defendant had been "aggressive" with her, trying to make her do things she did not want to do in a "sexual way." M.Y. took I.A. home so she could report this to their mother. M.Y. admitted that I.A. previously told her that she hated the defendant and that he was too strict.

L.R. agreed that the defendant and I.A. argued about discipline and phone privileges, elaborating that I.A. felt the defendant was too mean or harsh with her. L.R. testified that in March 2021, I.A. had become interested in boys. I.A. was angry, and L.R. thought it was because she wanted more freedom. L.R. testified that the defendant reacted by being overprotective. L.R. testified that she never doubted I.A. or thought she lied regarding the reports of abuse.

I.A. repeated her allegations against the defendant at trial.

Detective Hollis testified that she was able to access the video from the home cameras taken on June 4, 2021 - the day I.A. reported that the defendant tried to blindfold her.[3] Detective Hollis testified that the video depicted the defendant

---

[3] The State introduced this video into evidence and played it for the jury.

speaking with I.A., looking directly at one of the cameras, and turning back to I.A., stating: "Let's go to your room, you don't have no cameras in your room." The video showed a conversation between I.A. and the defendant in which the defendant repeatedly pressures I.A. to let him blindfold her, as well as a video of the defendant running downstairs with a scarf in his hand.

Detective Hollis testified that the defendant agreed to provide a statement after his arrest. The defendant stated that his stepdaughter said he touched her and tried to rape her; he denied it, saying she was a liar and never liked him. The defendant said that I.A. had lewd pictures on her phone and they took the phone away. He accused I.A.'s mother of failing to address these issues. He explained that they caught two boys in their house at 5 a.m. in March or April with I.A. He stated that he later found a nude video on I.A.'s phone of her having sex with a boy. The defendant said he did not touch I.A. but that he turned her around, looked at the video, and decided that it was not her because the body and skin tone did not match. In the interview, Detective Hollis told the defendant that I.A. said he took a nude photograph of her to compare her to the video found on her phone. The defendant denied taking the picture and stated there were no nude photos on his phone.

The defendant stated that the previous Friday, I.A. was home with him while he was watching several other children. While the other children were in the pool, he and I.A. discussed her phone. He stated he was in the upstairs hallway, and I.A. was in her room. I.A. stated she wanted to be "normal" and to go places. The defendant said he went downstairs to assist one of the children. He went back upstairs, and he and I.A. continued talking until her mother and M.Y. came home approximately fifteen to thirty minutes later.

The defendant stated that he was playing cards on Sunday when L.R. yelled at him to get out, and said she was calling the police. The defendant said he did

not know anything was wrong. He left in a car with his friends. The next day, he learned that he was accused of touching "the girl," that he tried to blindfold her, and that he had intercourse and oral sex with her. The defendant denied ever touching I.A. and asked why he would do this now because he had been around her for seven years.

In the interview, Detective Hollis asked the defendant what he told I.A. about the boys. The defendant said he talked to her about diseases, pregnancies, and her period. The defendant said he asked her why she wanted to have sex and what she wanted to do.[4]

Detective Hollis testified that in the video, the defendant mentioned a blindfold. When she asked him about it, the defendant said he did not know what it was about and always wore a scarf. He said he picked it up in the hallway and had it in his hand to put in the closet. After the defendant denied attempting to blindfold I.A., Detective Hollis brought up the cameras in the house and asked if he would like to discuss the blindfold again. The detective explained that she had video from a camera in his son's room. The defendant replied that he was talking to I.A. about kidnapping.

Detective Hollis brought a computer into the interview room, and she and the defendant viewed footage from the home cameras. She asked the defendant to tell her what was happening. The defendant identified his scarf in his hand. Detective Hollis pointed out that I.A. said she did not have to be blindfolded. The defendant replied that they were talking about her being kidnapped. The detective played further video and explained that I.A. said, "What are you going to talk to me while I'm blindfolded?" Detective Hollis acknowledged that the voices on the video were hard to hear.

---

[4] Detective Hollis acknowledged that she asked defendant if he talked to I.A. about "sucking d**k" and that he denied it.

In the interview, Detective Hollis said the defendant wanted to talk to I.A. off-camera and that the defendant wanted to blindfold I.A. The defendant stated that I.A. was talking to a person in New Jersey about running away, and this talk was about kidnapping. Detective Hollis noted that none of the videos discussed I.A. running away. She explained that what I.A. described to police aligns with the video. The defendant again denied touching I.A. or taking a picture of her. The defendant offered to pull up his iCloud. The defendant provided the detective with the name and password for two iCloud accounts, but this information did not allow her to access the accounts.

## LAW AND DISCUSSION

Sufficiency

In assignments of error two, three, and four, the defendant argues that the trial court erred in denying his motion for a new trial,[5] the verdict is contrary to law and evidence, and the trial court erred in denying his motion for post-verdict judgment of acquittal. In these assignments of error, the defendant is challenging the sufficiency of the evidence against him. "When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors," the Louisiana Supreme Court has instructed that a reviewing court "should first determine the sufficiency of the evidence." *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). "If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary." *Id.*

---

[5] The defendant did not properly brief this assignment of error. Under Uniform Rules - Courts of Appeal, Rule 2-12.4(B)(4), the court may consider as abandoned any assignment of error or issue for review which has not been briefed. *See State v. Diaz*, 20-381 (La. App. 5 Cir. 11/17/21), 331 So.3d 500, 532, *writ denied*, 21-1967 (La. 4/5/22), 335 So.3d 836. Restating an assigned error in brief without argument or citation of authority does not constitute briefing. *State v. Marie*, 07-397 (La. App. 5 Cir. 11/27/07), 973 So.2d 780, 781. Accordingly, the defendant has abandoned his assignment of error pertaining to the denial of his motion for a new trial.

The defendant argues that based on the testimony and evidence presented at trial, no rational trier of fact could have found I.A. credible or him guilty beyond a reasonable doubt. He argues that I.A. was motivated to fabricate the allegations because she did not like him. After all, he took her phone away, and she alleged that she saw domestic abuse. The defendant argues that when I.A. was examined at Children's Hospital, she said all of the incidents occurred between midnight and 5 a.m., but the video from the cameras in the home shows that it was daylight. The defendant states, "As to the incident which was the result of a sexual intercourse video found on I.A.'s phone, the defendant checked her back and part of her butt. That as opposed to having I.A. became [sic] fully naked."

The defendant explains that he voluntarily spoke to the police and provided the passwords to his iCloud accounts. He states that the cameras in the house did not capture any incidents of abuse and that no other family members observed any inappropriate sexual behavior by him. He contends that the State failed to prove beyond a reasonable doubt that the alleged abuse "occurred before March 6, 2021."[6] The defendant concludes that I.A. fabricated everything, that the jury acted irrationally in finding him guilty, and that the "Motion for New Trial and/or Motion for Post-verdict Judgment of Acquittal" should have been granted.

*Jackson v. Virginia*[7] instructs an appellate court addressing the sufficiency of the evidence to uphold a conviction "to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt." *State v. Clifton*, 17-538 (La. App. 5 Cir. 5/23/18), 248 So.3d 691, 702. This requires "the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing." The function

---

[6] This appears to be a typographical error. The victim turned thirteen on March 26, 2021.
[7] 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed 2d 560 (1979)

of the appellate court is not to "redetermine the defendant's guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses." *Id.* Accordingly, "in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction." *State v. Dixon*, 07-915 (La. App. 5 Cir. 3/11/08), 982 So.2d 146, 153, *writ denied sub nom. State ex rel. Dixon v. State*, 08-0987 (La. 1/30/09), 999 So.2d 745. This Court has specifically held that "[i]n sex offense cases, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense." *State v. Chinchilla*, 20-60 (La. App. 5 Cir. 12/23/20), 307 So.3d 1189, 1195, *writ denied*, 21-00274 (La. 4/27/21), 314 So.3d 838, *cert. denied*, -- U.S. --, 142 S.Ct. 296, 211 L.Ed.2d 138 (2012).

In this case, the defendant was found guilty of sexual battery of a child under thirteen. La. R.S. 14:43.1 defines sexual battery, in pertinent part, as follows:

> A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:
> …
>
> (2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender.

La. R.S. 14:43.1(C)(2) contains an enhanced penalty when the victim is under thirteen and the offender is seventeen or older.

On count two, the defendant was found guilty of indecent behavior with a juvenile under thirteen. La. R.S. 14:81 defines indecent behavior with a juvenile as follows:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
>
> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons.

La. R.S. 14:81(H)(2) contains an enhanced penalty when the victim is under thirteen and the offender is seventeen or older.

On count four, the defendant was found guilty of the responsive verdict of attempted indecent behavior with a juvenile. La. R.S. 14:27 defines an "attempt," for purposes of Title 14 crimes, as:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
>
> B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; …
> …
>
> C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.

Our review of the evidence in this case indicates it was sufficient to support each of the verdicts returned by the jury. Concerning count one, sexual battery, I.A. testified that the defendant placed his fingers inside her vagina when she was twelve years old. As to count two, indecent behavior, I.A. testified that on the same day, he had her take off her pants and underwear so he could compare her body to the body of a girl in a sexual position on her phone. Finally, as to count four, the second count of indecent behavior, the defendant took I.A. to a room in their house, tried to lift her legs, attempted to blindfold her, and then told her he wanted to lick her private area. I.A.'s trial testimony was consistent with her numerous disclosures made to her sister, her mother, Deputy Turnage, Detective

Hollis, Aubrey Zeigler, and Camille Detrenis. Surveillance video from her home corroborated her testimony. In his video-recorded statement to Detective Hollis, the defendant admitted he compared I.A.'s body to a photograph on her phone; he also admitted he tried to blindfold I.A. In her CAC interview, I.A. stated that the first two incidents occurred on March 16, 2021, when she was twelve. At trial, I.A. testified that she did not remember precisely when the first incidents occurred, but she testified that it "definitely happened before" March 26, her thirteenth birthday.

On appeal, the defendant is asking this Court to re-evaluate the credibility of the witnesses and re-weigh the testimony. In determining whether any rational trier of fact would have found the defendant guilty, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. *State v. Hutchinson*, 22-536 (La. App. 5 Cir. 8/18/23), 370 So.3d 769, 781, *writ denied*, 23-1296 (La. 2/27/24), 379 So.3d 662. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *Id.* After observing all the evidence, the jury determined that I.A.'s testimony was credible. Accordingly, we find that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found beyond a reasonable doubt that the evidence was sufficient to support the defendant's convictions.

Denial of Continuance

In assignment of error number one, the defendant argues that the trial judge abused his discretion when he denied the motions to continue the trial. He argues that denying a motion to continue based on counsel's inadequate trial preparation warrants reversal because the preparation time was unreasonably short and there was specific prejudice. He contends that his right to a fair trial was substantially affected by being forced to proceed to trial with counsel, who had inadequate time

to investigate or prepare a defense. He asserts that the circumstances that gave rise to the motions to continue were unexpected and beyond the counsel's control. The defendant says he never viewed any video evidence despite filing multiple motions to allow him to view electronic evidence.

On July 31, 2023, defense counsel filed a "Motion to Exclude Evidence Under La. C. Cr. P. Article 729.5; Alternative Motion to Compel Discovery and to Continue Trial." In this motion, defense counsel claimed he did not receive the results of a forensic analysis of the defendant's cell phone and the records for his iCloud accounts, and that this evidence was exculpatory. He requested the exclusion of this evidence or that the court compel the State to produce the evidence and grant a continuance to incorporate the evidence into his trial preparation.

On August 8, 2023, defense counsel filed a "Supplemental Memorandum in Support of Motion to Exclude Evidence Under La. C. Cr. P. Article 729.5; Alternative Motion to Compel Discovery and to Continue Trial." In this motion, the defendant claimed the State did not provide any surveillance footage from camera five, which he claimed had the best vantage point and would have captured the physical positions of I.A. and the defendant. He claimed this footage was exculpatory. Counsel concluded that the court should exclude any evidence of the June 4, 2021 incident or that the court compel the State to produce it and continue the trial.

The trial court addressed these motions at an August 9, 2023 hearing. The defense counsel explained that Article 729.5 pertains to unsatisfied discovery and that the court can exclude the evidence. He requested a continuance. The prosecutor responded that the evidence the defense referenced was a picture or video on the defendant's phone or iCloud account. The prosecutor said officers extracted no information from the defendant's inoperable phone. As such, officers

did not discover the contents of the phone. The prosecutor said that JPSO told him that "Apple" stated two of the three iCloud accounts contained no information. He noted that JPSO had not yet received any information regarding the third iCloud account. The State contended that the defendant's arguments did not warrant a continuance.

Defense counsel disagreed with the prosecutor's characterization of the evidence, arguing that the absence of the photograph was exculpatory. He argued that the picture could determine whether the jury accepts or rejects the accuser's testimony. Defense counsel also complained about gaps in the surveillance video from the upstairs of the residence, elaborating that the gaps occurred at critical times and that the evidence could be exculpatory if it shows that the defendant and the accuser were not in the same room. Counsel contended the court should exclude the evidence or continue the trial, and that the court order the State to either produce the evidence or explain why this evidence does not exist. The prosecutor responded that JPSO obtained all the surveillance video it could and that the State had turned over all video in its possession. The trial judge denied the motion to exclude the evidence and continue the trial, noting that there was nothing else to turn over and that some portions of the video were unavailable.

On August 14, 2023, the first day of trial, the defense counsel moved for a continuance. Counsel explained that on Sunday, August 12, 2023, he received an exhibit dated August 10, 2023, from the State asserting that the defendant's third iCloud account does exist and those records were pending. Counsel asserted that this account was the subject of a prior motion to compel, but the court denied the motion because he could not establish that the records existed. He re-urged the previous motion for a continuance pending the receipt of these records, and asked that the State be compelled to give it to the defense once received. Additionally,

counsel explained that a continuance was warranted because, due to an oversight, he had not obtained the CAC video, which was essential to prepare a defense.

The prosecutor responded that, as previously stated, officers could not extract photographs from the damaged phone. He further noted that "Apple" said there was no information in two iCloud accounts, and the third account was outstanding. The prosecutor stated that the victim would testify that the defendant took a picture, but JPSO did not find that photograph, and it would only hurt the defense if the photograph was found later. He contended that the defense would argue that the absence of the photograph indicates that the victim was lying. The prosecutor argued against a continuance. Upon questioning, the defense counsel admitted it would be detrimental to find the photograph. The judge explained that if the records came back with a photograph, the defense was in worse shape and that if the records came back with none, the defense was not in a different position. Defense counsel explained that there is also an alleged deleted pornographic video and that software experts say that "information is always salvageable."

Defense counsel argued that this information would be "in the cloud." The prosecutor said it may or may not be, and the judge said the user could turn off the iCloud storage. Defense counsel explained that there were several possible scenarios. He posited that if a photograph dated after the victim's birthday existed, it would exonerate the defendant as to count one, which is the most serious. The prosecutor asserted this was false, stating that the defendant could have taken two photographs. The prosecutor explained that Detective Hollis would testify that she could not find the picture.

The prosecutor next addressed the CAC video. He explained that at the last trial setting, the record shows that the State gave the defense everything in its possession, including the CAC video, using an online web-based platform. The

prosecutor explained how to access the video. After ascertaining the length of the video, the trial judge recessed so the defense counsel could view the CAC video.

Later, with the defendant present, the judge summarized the reasoning supporting the motion to continue. He stated one basis was now moot, but he asked defense counsel to put the basis for his motion on the record. Defense counsel reiterated that his motion to continue pertained to the defendant's iCloud and phone. He stated that the defendant allegedly took a photograph on his phone and that the defense had not seen it or any of the iCloud records. Counsel provided that days prior, he received an update that the JPSO confirmed one iCloud account existed and that those records were pending. He argued that the State could use the pending records to refute the defendant's argument that no photograph exists. He further contended that it is exculpatory if there is no photograph and that this information was needed to prepare a proper defense. The defense counsel explained that the second basis of his motion was that he had not obtained a copy of the CAC video before that day. He characterized this as a potential preparation issue and acknowledged that the court allowed him to review the video.

The prosecutor responded that the August 9th hearing addressed the issue and that the supplemental report memorialized what he told counsel. He provided that the lead detective would testify that she could not find the alleged photograph, which was favorable to the defense. The prosecutor explained that the victim thought the defendant had deleted the picture. He argued that a continuance is not necessary.

As to the other basis, the prosecutor provided that on May 8, 2023, the State gave prior counsel instructions to view the CAC video. He further recalled that on June 15, 2023, after the court continued the case, he put on the record, in the presence of past and current defense counsel, that everything in the State's possession was available to the defense. He asserted that the video was available

to counsel months prior. Defense counsel added that he enrolled as counsel of record in this case on June 15, his first day with the public defender's office. The judge explained that he allowed counsel to review the tape that morning, which delayed jury selection to accommodate counsel. The judge noted that defense counsel would have additional time to review the video that evening and throughout the trial. The judge then denied the motion to continue the trial.

A motion for a continuance must be in writing, allege the specific grounds for the continuance, and be filed at least seven days before trial. La. C.Cr.P. art. 707. At any time, upon written motion and after contradictory hearing, the court may grant a continuance but only upon a showing that the motion is in the interest of justice. *Id*.

La. C.Cr.P. art. 712 states, "A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor." Whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. *State v. Perilloux*, 21-448 (La. App. 5 Cir. 12/20/23), 378 So.3d 280, 314, *writ denied*, 24-104 (La. 9/4/24), 391 So.3d 1055. Generally, a conviction will not be reversed, even on a showing of an improper denial of a motion for a continuance, absent a showing of specific prejudice. *State v. Simmons*, 13-258 (La. App. 5 Cir. 2/26/14), 136 So.3d 358, 366, *writ denied*, 14-674 (La. 10/31/14), 152 So.3d 151.

There were two evidentiary bases for the requested trial continuances: the iCloud records and the CAC video. On appeal, the defendant argues that these items reflect the inadequate trial preparation of trial counsel.

Regarding the iCloud records, two of the three accounts did not exist. The weekend before trial, confirmation of the existence of the third account occurred. As the prosecutor indicated in the CAC video played at trial, I.A. stated the

defendant had a new phone and that she was unsure if he deleted the picture. Also, at trial, Detective Hollis acknowledged they did not find the photograph on the iCloud account. There was no mention at trial that any iCloud records were still pending. Testimony that officers did not find the picture bolstered the defense that I.A. was not credible, as contradicting her testimony that the defendant photographed her. Thus, the defendant has not established how a continuance would have benefitted him and has not claimed that the photograph was located. Accordingly, the late disclosure that no one found the picture did not prejudice the defendant.

Regarding the CAC video, the judge delayed jury selection to allow counsel to view the video. The defendant has not established how a continuance would have benefitted him, as he was permitted to view the video before the commencement of trial and could utilize evenings and breaks to continue any further review of the video.

Concerning inadequate trial preparation, the time was not so minimal as to call into question the fundamental fairness of the proceeding. Defense counsel had approximately two months to prepare for trial. The cases relied on by the defendant had significantly shorter preparation times. *See State v. Commodore*, 00-76 (La. App. 4 Cir. 11/21/00), 774 So.2d 318, *writ denied*, 00-3485 (La. 11/2/01), 800 So.2d 869 (substitute counsel was filling in for assigned counsel on the day of trial); *State v. Knight*, 611 So.2d 1381 (La. 1993) (counsel was in court to "cover" the docket and appointed the day of trial); *State v. Simpson*, 403 So.2d 1214 (La. 1981) (trial judge abused his discretion in denying the defendant's motion for continuance when a new attorney was appointed on the day of trial); *State v. Winston*, 327 So.2d 380 (La. 1976) (conviction for distribution of heroin reversed when defense counsel was given only three days, which included a weekend, in which to prepare for trial).

This Court has upheld the denial of motions to continue where there have been as little as two months between the arraignment and trial date, reasoning that such a period is sufficient for a defendant to retain counsel. *See State v. Clifton*, 08-139 (La. App. 5 Cir. 10/28/08), 997 So.2d 642, *writ denied*, 08-2862 (La. 9/4/09), 17 So.3d 951 (three months between the arraignment and trial); *State v. Bartley*, 03-1382 (La. App. 5 Cir. 3/30/04), 871 So.2d 563, 566-68, *writ denied*, 04-1055 (La. 10/1/04), 883 So.2d 1006 (two months between the arraignment and trial); *State v. Williams*, 00-1850 (La. App. 5 Cir. 4/11/01), 786 So.2d 785, 790-91, *writ denied*, 01-1432 (La. 4/12/02), 812 So.2d 666 (three months between the arraignment and trial); *State v. Divine*, 98-812 (La. App. 5 Cir. 5/19/99), 738 So.2d 614, 617, *writ denied*, 99-2393 (La. 2/4/00), 754 So.2d 222, *cert. denied*, 530 U.S. 1219, 120 S.Ct. 2227, 147 L.Ed.2d 258 (2000) (two months between the arraignment and trial).

Here, defense counsel had two months to prepare, and nothing in the record suggests that counsel was not sufficiently familiar with the case. Defense counsel cross-examined every witness at trial, and the record does not reflect that counsel pursued any theories adverse to the defendant. Our review indicates that the defendant fails to show prejudice by the denial of his motion to continue. In particular, he fails to demonstrate how his strategy would have differed if the trial court had granted a continuance. Accordingly, the trial judge did not commit error in denying the defendant's motion to continue. This assignment is without merit.

Denial of motion to instruct the jury as to mandatory penalty

In his seventh assignment of error, the defendant argues that the trial court committed reversible error by failing to inform the jury of the mandatory penalties he faced upon conviction. The defendant asserts that the mandatory penalty for sexual battery under thirteen is twenty-five years imprisonment without the benefit of probation, parole, or suspension of sentence and that the mandatory penalty for

indecent behavior with a juvenile under thirteen starts at two years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The defendant contends that the language in *State v. Jackson*, 450 So.2d 621 (La. 1984), makes it clear that the judge was required to inform the jury of the mandatory sentences when he requested it, and that there is no distinction as to a mandatory minimum or maximum sentence. He argues that the sentences for counts one and two were mandatory.

In the "Motion to Instruct Jury as to Mandatory Penalties and For Leave for Defense to Argue Same," the defendant requested that the court instruct the jury and allow him to argue about the minimum sentences on counts one and two and the sex offender registration requirement for each count.

The State filed an opposition, arguing that instructions and arguments about the penalty are not required if there is a mandatory minimum and a sentencing range that gives the court discretion. It asserted that the defendant was not entitled to inform the jury of the minimum sentences for counts one and two. It further agreed that the sex offender registration requirements are non-discretionary and "would likely fall within the ambit of *Jackson*."

At the August 9, 2023 hearing, defense counsel argued that when a conviction results in a particular penalty, and he raises the issue correctly, the court must instruct the jury on the minimum penalty and allow the defendant to argue it. The prosecutor responded the jury should only be instructed about the sentence when the court has no sentencing discretion, such as a mandatory sentence of life imprisonment; in this case, the charges all have a sentencing range, which does not allow penalty instructions to the jury.[8]

---

[8] The prosecutor conceded that the sex offender registration requirement on each count is non-discretionary and, therefore, appropriate for instructing the jury.

Defense counsel clarified that he was not seeking to instruct the jury on the sentencing ranges but, instead, the minimum penalty, which is not discretionary. The trial judge denied the motion after the defense counsel could not provide any case law supporting his position.

La. C.Cr.P. art. 774 regarding the scope of arguments states:

The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.

The argument shall not appeal to prejudice.

The State's rebuttal shall be confined to answering the argument of the defendant.

La. C.Cr.P. art. 802, pertaining to the scope of jury charges, provides:

The court shall charge the jury:

(1) As to the law applicable to the case;

(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and

(3) That the jury alone shall determine the weight and credibility of the evidence.

In *Jackson*, 450 So.2d 621, the defendant was indicted for first-degree murder. The trial court refused to instruct the jury as to the applicable penalty provisions of the responsive verdicts, second-degree murder, and manslaughter. The Supreme Court recognized that when the penalty imposed by the statute is mandatory, on the defendant's request, the trial judge must inform the jury and permit the defendant to argue the penalty to the jury. The court further stated, "In instances other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict, the decision to permit or deny an instruction or argument on an offense's penalty is within the discretion of the trial judge." *Id.* at 633-34.

In *State v. Guidry*, 16-1412 (La. 3/15/17), 221 So.3d 815, the Louisiana Supreme Court examined the jurisprudence regarding informing a jury of a sentence. The Court noted that in *State v. Harris*, 258 La. 720, 247 So.2d 847 (1971), the Court held that the determination of the appropriate penalty and the imposition of sentence in non-capital cases are functions of the judge and that the jury is concerned only with guilt. As such, the *Harris* court held that sentence regulations in non-capital cases, such as those relating to mandatory terms, probation, or parole, are inappropriate subjects for the judge's charge to the jury and the defense counsel's arguments to the jury.

We find no error in the trial court's denial of the defendant's motion to inform and argue to the jury regarding the mandatory minimum sentences. A penalty range with a minimum sentence does not constitute a mandatory penalty. *See State v. Wiggins*, 556 So.2d 622, 627 (La. App. 5 Cir. 1990) (where this Court stated that neither of the crimes the defendant was charged with contained a mandatory penalty but rather set out a range of punishment). Accordingly, denying the defendant's request was within the trial court's discretion. This assignment of error is without merit.

## ERRORS PATENT

We reviewed the record for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990), and found a patent error that requires we vacate the defendant's sentences on counts one and two.

La. C.Cr.P. art. 873 states in part, "If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled." If the defendant expressly waives a delay provided for in this article, the court may impose a sentence immediately. *See* La. C.Cr.P. art. 873. When a defendant challenges the penalty imposed and the imposed

sentence is not mandatory, the failure to observe the twenty-four-hour delay mandated in La. C.Cr.P. art. 873 cannot be considered a harmless error. *State v. Loggins*, 23-519 (La. App. 5 Cir. 10/30/24), 2024 WL 4612601. Generally, when a defendant challenges a non-mandatory sentence and does not waive the delays, the court must vacate the defendant's sentence and remand for resentencing. *Id.*

In *State v. Kisack*, 16-797 (La. 10/18/17), 236 So.3d 1201, 1205-06, *cert. denied*, 583 U.S. 1160, 138 S.Ct. 1175, 200 L.Ed.2d 322 (2018), the Louisiana Supreme Court stated that a defendant's pronouncement of his readiness for sentencing may operate as an express waiver of the twenty-four-hour sentencing delay. Still, a defendant's mere participation in the sentencing hearing cannot constitute an express waiver as required by La. C.Cr.P. art. 873.

In the present case, the trial judge denied the defendant's "Motion for Post-Verdict Judgment of Acquittal Motion for Arrest of Judgement Motion for New Trial." Defense counsel objected to the rulings, and the judge asked if there was anything else. The prosecutor said there was a victim impact statement. The judge acknowledged that he would consider the defense motion for a departure from the minimum sentence as a memorandum. The court received the victim's impact statement and added it to the record. The prosecutor stated he had nothing further. The judge then asked if the defense counsel had "anything else," and counsel replied that he had letters of support he would like filed into the record. The judge asked the defendant if he had anything to add and if he wished to address the victim. The defendant did not want to make a statement. The judge then sentenced the defendant.

In *Loggins*, *supra*, the trial court denied motions for post-verdict judgment of acquittal and a new trial with imposition of the defendant's sentences on the same day. At the hearing, after the trial court denied the motion and heard the victim impact statement, the trial court asked the defense if there was anything

further, and the defense answered negatively. This Court found this was not an express waiver of the requisite sentencing delay. This Court explained that the defendant did not challenge his mandatory life sentence; however, the defendant challenged his sentence as to the count of obstruction of justice, which did not carry a mandatory sentence. This Court vacated the sentence imposed for the obstruction of justice conviction, remanded the matter to the trial court for resentencing, and pretermitted discussion of the defendant's consecutive sentence assignment of error. *Id.*

In this case, none of the defendant's sentences were mandatory, and he challenges the sentences imposed on counts one and two. For this reason, we vacate the sentences imposed on counts one and two, remand this matter to the trial court for resentencing, and pretermit addressing the assignments of error on those sentences. *See Loggin*, *supra*. *See also State v. Francis*, 19-227 (La. 4/29/19), 268 So.3d 289 (*per curiam*) (The Supreme Court found that the defendant did not waive the delay and that the error in failing to observe the delay was not harmless because the defendant challenged his manslaughter sentence. The Court vacated the sentence and remanded the matter to the district court for resentencing.)

The defendant does not challenge the sentence on count four on appeal. Absent a showing of prejudice, when a defendant does not waive the delay afforded in Article 873 and does not challenge the penalty imposed, the error may be harmless. *State v. Perez-Espinosa*, 19-601 (La. App. 5 Cir. 9/22/20), 302 So.3d 598, 603. Absent a showing of prejudice from the failure to afford the statutory delay, reversal of a prematurely imposed sentence is not required. *Id.* Failure to observe the delay before imposing the sentence on count four is harmless, and we affirm this sentence.

<u>Dates in Uniform Commitment Order</u>

In addition, we note an error in the *nunc pro tunc* September 13, 2023, uniform commitment order (UCO). The UCO states that counts one, two, and four occurred on March 1, 2021. However, the record indicates that counts one and two occurred between March 1, 2021 and March 25, 2021, and count four occurred between March 26, 2021 and June 11, 2021. On resentencing, the dates on the UCO are to be corrected.

<u>Fines/Fees</u>

The judge imposed a $250 crime lab fee. La. C.Cr.P. art. 875.1 requires the court to conduct a hearing to determine whether payment of any fine, fee, cost, restitution, or monetary obligation would cause substantial financial hardship to the defendant or his dependents. There is no indication that the trial court conducted such a hearing or that the defendant waived this judicial determination. Accordingly, due to the requirements of La. C.Cr.P. art. 875.1, we vacate the financial obligation imposed on the defendant. On remand, the trial court is to comply with La. C.Cr.P. art. 875.1. *See State v. Bello-Urbina*, 24-8 (La. App. 5 Cir. 10/30/24), 2024 WL 4612665.

<u>Advisal</u>

Finally, while the sentencing minute entry reflects that "the Court informed the defendant he has … two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief," the transcript does not contain this advisal. *See State v. Lynch*, 441 So.2d 732, 734 (La. 1983). On remand, the trial court is to properly advise the defendant of the time periods for seeking post-conviction relief, according to La. C.Cr.P. art. 930.8.

## CONCLUSION

For the preceding reasons, we affirm the defendant's convictions and his sentence on count four. We vacate the defendant's sentences on counts one and two and remand for resentencing as instructed above.

**CONVICTIONS AFFIRMED; SENTENCE ON COUNT FOUR AFFIRMED; SENTENCES ON COUNTS ONE AND TWO VACATED; REMANDED FOR RESENTENCING**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 26, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 24-KA-199

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
MATTHEW R. CLAUSS (APPELLEE)       THOMAS J. BUTLER (APPELLEE)       KEVIN V. BOSHEA (APPELLANT)

**MAILED**
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053